**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JUDGE GOTTSCHALL

MAGISTRATE JUDGE LEVIN

| | | |
|---|---|---|
| JOHN C. WOOLARD, | ) | |
| | ) | **05C 7280** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| ROBERT C. WOOLARD, individually | ) | |
| and as Trustee of the John C. Woolard | ) | **FILED** |
| Present Interest Trust and the John C. | ) | |
| Woolard 1991 Trust; | ) | DEC 2 9 2005  *f'0* |
| | ) | |
| Defendant. | ) | **MICHAEL W. DOBBINS** |
| | | **CLERK, U.S. DISTRICT COURT** |

## COMPLAINT FOR TRUST ACCOUNTING
## AND BREACH OF TRUST

Plaintiff John C. Woolard, by his attorneys, Michael H. Moirano and Claire E. Gorman,

states as his complaint against Defendant Robert C. Woolard, individually and as Trustee of the

John C. Woolard Present Interest Trust and the John C. Woolard 1991 Trust, as follows:

### INTRODUCTION

1.      This is an action for an accounting of the assets of two trusts established for the

benefit of the plaintiff and for which the defendant served as trustee. Plaintiff also seeks to

recover damages for trust assets which were wrongfully dissipated by the defendant while he

served as trustee.

### PARTIES

2.      Plaintiff John C. Woolard is the sole named beneficiary of two trusts established

by his father, John F. Woolard, deceased. Plaintiff is a citizen of California, residing in Los

Angeles, California.

3.     Defendant Robert C. Woolard is the brother of John F. Woolard and plaintiff's uncle. At all times, defendant was the trustee of the two trusts established by John F. Woolard for plaintiff's benefit. Defendant is a citizen of Missouri, residing in Branson, Missouri.

## JURISDICTION AND VENUE

4.     This court has jurisdiction pursuant to 28 USC §1332(a)(1) in that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

5.     Venue is proper in this judicial district pursuant to 28 USC §1391(a)(2) in that a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this judicial district.

## ESTABLISHMENT AND FUNDING OF TRUSTS

6.     On May 31, 1983, the plaintiff's father, John F. Woolard, as donor, and the defendant, as trustee entered into a trust agreement known as the John C. Woolard Present Interest Trust (the "1983 Trust"), a true and correct copy of which is attached as Exhibit A hereto.

7.     The 1983 Trust was initially funded with a $500 contribution from plaintiff's father, John F. Woolard. From time to time thereafter until June 2001, additional contributions totaling in excess of $927,000 were made to the 1983 Trust on dates and in amounts unknown to plaintiff.

8.     On December 23, 1991, plaintiff's father, as donor, and the defendant, as trustee entered into an irrevocable trust agreement known as the John C. Woolard 1991 Trust (the "1991 Trust"), a true and correct copy of which is attached as Exhibit B hereto.

9.     The 1991 Trust was initially funded with a $500 contribution from plaintiff's father, John F. Woolard. On information and belief, there were no further contributions made to the 1991 Trust.

## TERMS OF THE TRUSTS

10.     Both the 1983 Trust and the 1991 Trust were established for the sole benefit of plaintiff and plaintiff was the only beneficiary named therein.

11.     Under the terms of both Trusts, the principal and income from the Trusts were to be paid to or for the exclusive benefit of the plaintiff.

12.     The 1983 Trust provides in Article II, ¶ 1:

"Until John attains the age of twenty-one(21) years or dies, whichever first

occurs, the Trustee may pay out and distribute the net income and principal to, or

apply for the benefit of, John in such amount or amounts as may be determined

in the sole discretion of the Trustee, and the Trustee shall accumulate all net

income not so distributed and add the same to the principal."

The 1991 Trust contains a similar provision in ¶ 2(a).

13.     The 1983 Trust further provides in Article IV, ¶ 3 that the Trustee has the power "[t]o loan or reloan (sic) any part of the trust property to any person (other than to [John F. Woolard]) or entity upon adequate security and at current interest rate."

## ADMINISTRATION OF THE TRUSTS

14.     At the time the 1983 Trust was established, defendant was employed as a vice president of investments and an account executive at the Chicago brokerage firm now know as Stifel, Nicolaus & Company, Incorporated ("Stifel, Nicolaus"). On information and belief, the defendant remained employed as a vice president of investments and an account executive at

3

Stifel, Nicolas until he retired in August 2003.

15.     On information and belief, defendant deposited all of the 1983 Trust assets in and invested and disbursed them through a brokerage account he opened in the name of the 1983 Trust at Stifel, Nicolaus. Defendant served as the account executive for the Stifel, Nicolaus 1983 Trust account.

16.     From time to time while the Trust assets were held in the account at Stifel Nicolaus, distributions of income were made by the defendant to or for the benefit of the plaintiff. These distributions were few in number and were for relatively modest amounts.

17.     However, on information and belief, in or about January 1990, the defendant began making unauthorized distributions of the principal of the 1983 Trust in the Stifel, Nicolaus account. These distributions were made to plaintiff's father and were not made to or for the benefit of plaintiff but for purposes not permitted by the Trust.

18.     On information and belief, the 1983 Trust funds which were distributed to plaintiff's father were used in part to invest in or to support investments in various failing businesses ventures in which defendant and plaintiff's father shared an interest.

19.     The distributions of the 1983 Trust funds to plaintiff's father continued through February 2001 and totaled in excess of $870,000.

20.     The disbursements made by defendant to plaintiff's father were evidenced in part by promissory notes issued by plaintiff's father and made payable to either the 1983 Trust or to defendant as "Trustee of the John C. Woolard Trust"and constituted impermissible loans from the 1983 Trust to plaintiff's father.

21.     In addition to the loans made with Trust assets to plaintiff's father, defendant also invested a significant portion of the 1983 Trust funds in the stock of a high risk, thinly traded

4

company in which the defendant personally held a substantial interest. On information and belief, defendant made this investment in order to support the failing company and in an attempt to bolster and save his own personal investment, in total disregard for the best interests of the plaintiff or the 1983 Trust.

## PLAINTIFF'S DISCOVERY OF THE WRONGFUL DISBURSEMENTS AND DEFENDANT'S EFFORT TO RECOVER THE FUNDS

22. Plaintiff's father died on July 3, 2002.

23. Following his father's death, plaintiff first learned that the 1983 Trust had been depleted of most of their assets. Prior to this time, plaintiff was aware that a trust or trusts had been established for his benefit; however, plaintiff had no idea how the assets of the trust(s) had been invested or administered, or that most of the trust funds had been disbursed by the defendant.

24. By June 2003, after the plaintiff had attained the age of 21 years and was entitled to receive the principal and interest in the 1983 Trust, the total value of the 1983 Trust assets was only approximately $18,000.

25. Following the death of plaintiff's father, defendant, in his capacity as Trustee of the 1983 Trust, attempted to recover the 1983 Trust assets loaned to plaintiff's father filed a claim in the probate estate of plaintiff's father. Defendant specifically alleged in the claim that "John F. Woolard borrowed the total sum of $877,933 from the John C. Woolard Present Interest Trust." Defendant also attached to the probate claim a listing of check stubs and demand notes totaling $877,933 which purported to reflect the $877,933 in loans made by the 1983 Trust.

26. Plaintiff's father died virtually insolvent. There has not been and there is not expected to be any payment made to defendant on the probate claim he filed.

5

## COUNT I
## ACTION FOR AN ACCOUNTING

27.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 26 above paragraph 27 of this Count I.

28.     Under the Illinois Trusts and Trustees Act, 760 ILCS 5/11, every trustee at least annually is required to furnish to any beneficiary entitled to receive or have the benefit of the income from the trust an account showing the receipts, disbursements and inventory of the trust estate.   Illinois law is expressly made applicable to the 1983 Trust.

29.     On August 23, 2003, plaintiff through his counsel made a demand upon defendant for a full accounting of all transactions in the 1983 Trust, including an accounting of all contributions, disbursements, investments, loans or other transactions pertaining to the Trust.

30.     To date, defendant has failed and refused to provide the requested accounting.

31.     Plaintiff does not have any adequate remedy at law to determine the amount and dates of the contributions to, investments for, and disbursements from the 1983 Trust since its inception in 1983.

32.     Plaintiff also has no ability to determine if or when the 1991 Trust was funded or how any contributions to that Trust were invested or disbursed.

33.     Additionally, by reason of defendants' wrongful disbursements and loans to plaintiff's father, defendant breached his fiduciary duties as Trustee of the 1983 Trust and is required, as a matter of Illinois common law, to provide an accounting of the Trust assets.

Wherefore, plaintiff John C. Woolard prays that the defendant Robert C. Woolard be ordered to provide a full accounting of the 1983 Trust and 1991 Trust including a full accounting of the dates and amounts of all contributions to each Trust; the dates and amounts of all

6

investments made for the Trusts; the dates, amounts and reasons for all disbursements made from the Trusts; and an annual inventory of the Trusts' assets since their inception. Plaintiff also prays that he be awarded his costs of suit.

## COUNT II
## ACTION FOR BREACH OF TRUST

34.     Plaintiff incorporates by reference paragraphs 1 through 26 above as paragraph 34 of this Count II.

35.     By reason of defendant's conduct in making distributions from the 1983 Trust which were not to or for the express benefit of plaintiff, defendant breached the obligations imposed upon him under Article II, ¶ 1 of the 1983 Trust.

36.     By reason of defendant's conduct in making unauthorized loans to plaintiff's father, defendant breached the obligations imposed upon him under Article IV, ¶ 3 of the 1983 Trust.

37.     As a direct and proximate result of defendant's breach of the terms of the 1983 Trust, plaintiff has been damaged in an amount not less than $877,933, plus interest.

Wherefore, plaintiff John C. Woolard prays that judgment be entered in his favor and against defendant Robert C. Woolard for compensatory damages in an amount not less than $877,933, plus interest which has accrued on such amounts since the dates the amounts were wrongfully disbursed from the 1983 Trust, plus plaintiff's costs of suit.

## COUNT III
## ACTION FOR BREACH OF FIDUCIARY DUTIES

38.     Plaintiff incorporates by reference paragraphs 1 through 26 above as paragraph 38 of this Count III.

39.     As the Trustee of the 1983 Trust, defendant owed plaintiff the highest fiduciary

7

duty and was required to act at all times honestly, with undivided loyalty, and in complete good faith in the administration of the Trust.

40.   Defendant breached his fiduciary duties to plaintiff and the Trust by, among other things:

(a)   making unauthorized distributions from the 1983 Trust which were not to or for the express benefit of the plaintiff;

(b)   making unauthorized loans to plaintiff's father;

(c)   investing Trust assets in a high risk, thinly traded company in which he had a substantial personal interest; and

(d) otherwise completely abdicating his duties and responsibilities to the Trust and allowing the Trust assets to be almost completely depleted.

41.   As a direct and proximate result of defendant's breach of his fiduciary duties, plaintiff has been damaged in an amount not less than $950,000 plus interest.

Wherefore, plaintiff John C. Woolard prays that judgment be entered in his favor and against defendant Robert C. Woolard for compensatory damages in an amount not less than $950,000, for punitive damages in an amount not less than three times the compensatory damage award, plus interest and his costs of suit.

Plaintiff demands trial by jury.

John C. Woolard,

By:

One of his attorneys

Michael H. Moirano
Claire E. Gorman
NISEN & ELLIOTT

8

200 West Adams Street
Suite 2500
Chicago, Illinois 60606
(312) 346-7800
Atty. No. 90599

A

TRUST AGREEMENT

BETWEEN

JOHN F. WOOLARD, DONOR

AND

ROBERT C. WOOLARD, TRUSTEE

THE

JOHN C. WOOLARD

PRESENT INTEREST TRUST

THIS TRUST AGREEMENT is made this 31 day of ___May___,
1983, between JOHN F. WOOLARD (the "Donor" hereinafter referred
to is the first person), and ROBERT C. WOOLARD ("the Trustee").

I hereby transfer to the Trustee the property listed in the
attached Schedule "A". Such property and all investments and
reinvestments thereof and additions thereto, hereinafter collec-
tively referred to as the "trust estate", shall be held upon the
following trusts:

## ARTICLE I

1. This trust may be known as "THE JOHN C. WOOLARD PRESENT
INTEREST TRUST".

2. This instrument and the trust created hereby shall be
irrevocable and unamendable. I reserve no right, power or
privilege to alter or amend this instrument, or to revoke or
terminate this instrument or the trust created hereby.

## ARTICLE II

This trust shall be held, administered and disposed of by the
Trustee for the benefit of JOHN C. WOOLARD ("John"), my son, as
follows:

1. Until John attains the age of twenty-one (21) years or
dies, whichever first occurs, the Trustee may pay out and

distribute the net income and principal to, or apply for the benefit of, John in such amount or amounts as may be determined in the sole discretion of the Trustee, and the Trustee shall accumulate all net income not so distributed and add the same to principal.

2.     After John has reached the age of twenty-one (21) years, the Trustee may pay out and distribute such amount or amounts of the net income and principal to John as may be determined in the sole discretion of the Trustee after considering John's maturity and judgment in handling financial matters; provided, however, within one (1) year prior to John's attaining the age of twenty-one (21) years, the Trustee shall deliver written notification to John that John may withdraw all or any part of the principal and undistributed income of this trust at any time or times during the thirty (30) days immediately following John's attaining the age of twenty-one (21) years. Payments of principal and undistributed income to John shall be made without question upon John's written request delivered to the Trustee within said thirty (30) day period. The right of withdrawal shall be a privilege which may be exercised only voluntarily by John or the legally appointed conservator or guardian of his estate and shall not include any involuntary exercise.

3.     On John's death, the Trustee shall pay out and distribute the remaining trust estate to or in favor of such person or persons including his estate, in such manner, amounts and propor-

tions and for such estates and interests and outright or upon such terms, trusts, conditions and limitations as John shall appoint by Will referring specifically to this power of appointment.

4. On John's death, if, or to the extent that he does not effectively exercise his power to appoint by Will, the Trustee shall pay out and distribute the remaining trust estate and any undistributed income to his then living issue, per stirpes, and if no such issue of John is then living, to my then living issue, per stirpes, and if no issue of mine is then living, to Robert C. Woolard, my brother, or if he is not then living, to his then living issue, per stirpes.

## ARTICLE III

1. The interest of the beneficiary in income shall be free from the control or interference of any creditor of a beneficiary or of any spouse of a married beneficiary and shall not be subject to attachment or susceptible of anticipation or alienation.

2. Payments of income or principal which may be or are required to be made to a person who is a minor, or is a person under legal disability, or is a person not adjudicated incompetent but who, by reason of illness, age or mental or physical disability, is in the opinion of the Trustee unable properly to manage him, may be applied directly in the sole discretion of the Trustee for the benefit of such person or may be made to any of the following: (a) directly to such beneficiary; (b) to a duly appointed guardian or conservator of the person or estate of such beneficiary; or (c) to a custodian under the Uniform Gifts to Minors Act in any jurisdiction. In each case the receipt of such minor, beneficiary or the person to whom any payment is made or entrusted shall be a complete discharge of the Trustee in respect thereof.

3. Whenever any payment under this instrument is required to be made on the termination of any separate trust hereunder to a person who is a minor, is a person under a legal disability, or is a person not adjudicated incompetent but who, by reason of illness, age or other mental or physical disability, is in the opinion of the Trustee unable properly to manage his own affairs, the amount required to be paid shall be indefeasibly vested in such person, but in the sole discretion of the Trustee, the Trustee may (a) transfer such amount to a custodian under the Uniform Gifts to Minors Act of any jurisdiction if such person is a minor; (b) make distribution directly to such beneficiary, to the legally appointed guardian or conservator of the person or estate of such beneficiary, or to any other person for the benefit of such beneficiary; or (c) retain such amount until such person attains his or her majority, regains his or her ability to manage his or her own affairs in the opinion of the Trustee, or dies, whichever first occurs, and may pay the income and principal to the person in such amount or amounts and from time to time as may be determined in the sole discretion of the Trustee. Any income not so distributed may be added to principal from time to time. If such person lives to attain his or her majority or regain his or her competency in the opinion of the Trustee, then in such event when he or she attains or regains such status, the Trustee shall pay out and distribute the then remaining principal and undistributed income to such person, and if such person dies before attaining or regaining such status, then at such time the Trustee shall pay out and distribute the then remaining principal and undistributed income to such person's estate.

4. In disposing of any trust property subject to a power of appointment by will, the Trustee may rely upon an instrument admitted to probate in any jurisdiction as the will of the donee or may assume that the donee died intestate if the Trustee has no notice of a will within three (3) months after the donee's death.

## ARTICLE IV

In extension and not in limitation of the powers given by law or other provisions of this agreement, the Trustee shall have the following powers and authority with respect to any trust established hereunder and the property held in such trust, in each case to be exercised from time to time in the sole discretion of the Trustee and without order or confirmation of court:

-4-

1.  To retain any securities or other property received from any source or acquired through purchase, exchange or otherwise, notwithstanding any statute or rule of law regarding the diversification, character, or suitability of investments by fiduciaries.

2.  To invest and reinvest in stocks, bonds, debentures, mortgages, notes and other securities or obligations of corporations, unincorporated associations, governmental branches, or trusts, and of investment companies, or in real estate and interests therein, or in common trust funds, or in any other kind of personal or real property, notwithstanding any statute or rule of law regarding the diversification, character or suitability of investments by fiduciaries.

3.  To loan or reloan any part of the trust property to any person (other than myself) or entity upon adequate security and at current interest rates.

4.  To sell real or personal property at public or private sale, and without notice, and to exchange, lease, give options for, and make contracts concerning the same for such price and upon such terms as may be determined to be adequate consideration in money or money's worth in the sole discretion of the Trustee; to execute deeds, transfers, leases and other instruments of any kind; and to transfer and convey all or any part of the trust property, freed and released of and from the trust established hereunder.

5.  To lease and sublease real property or improvements thereon for any period of time, which period may extend beyond the termination of the trust established hereunder; to renew such leases; to improve or develop real property; to construct, reconstruct, alter, remove or demolish improvements; to grant easements or charges of any kind, and give contracts or agreements for party walls or in relation thereto; to dedicate parks, streets, alleys, and highways; to vacate any subdivision of and to subdivide real property; to partition and to join with co-owners and others in dealing with real property in any way; and to mortgage or otherwise encumber real property.

6.  To borrow money from any lender including a trustee hereunder, individually, and including myself, individually, upon such terms and conditions as the Trustee may deem advisable, including the power to borrow funds for the purpose of purchasing United States Government obligations; and to mortgage, pledge, or otherwise encumber all or any part of the trust property as security for such borrowing; provided, however, any borrowing from myself individually shall be without interest or security.

7. To cause any trust property to be held in bearer form, or in the name of the Trustee, or in the name of a nominee, with or without indication of fiduciary capacity, to deposit cash in an account in a bank (including a fiduciary hereunder) with or without indication of fiduciary capacity.

8. To exercise or refrain from the exercise of any and all rights and privileges of or attaching to any trust property including, but not by way of limitation, stock options, voting rights, conversion privileges, and subscription rights; to give general or special proxies or powers of attorney for voting or acting with respect to such property; to deposit securities with or transfer them to protective committees or similar bodies; to consent to and enter into reorganizations, consolidations, mergers, liquidations, foreclosures, sales of property, and readjustments of the financial structure of corporations or other organizations; and generally to exercise with respect to all trust property the same rights and powers as are or may be lawfully exercised by persons owning similar property in their own right.

9. To employ, retain or designate investment counsel, custodians of trust property, brokers, agents, deputies and attorneys even though the Trustee may be so retained or may be employed by or a member of an organization so retained, and to delegate to them such powers as considered desirable by the Trustee.

10. To pay all necessary taxes, costs, charges, fees and expenses in connection with the administration of the trust established hereunder.

11. To compromise, contest, prosecute, or abandon claims or demands in favor of or against the trust or trust property.

12. To make any division or distribution of the trust property in undivided interests whether or not proportionate, in cash, in kind, or partly in cash and partly in kind without being subject to question by any beneficiary and without adjustment to compensate for a disproportionate allocation of unrealized gain for Federal income tax purposes.

13. To transfer the situs of any trust property to any other jurisdiction as often as deemed advantageous to the trust by the Trustee, appointing a substitute trustee (other than myself) to act with respect thereto; and in connection therewith, to delegate to the substitute trustee any or all of the powers, discretionary or otherwise, given to the Trustee, who may elect to act as advisor to the substitute trustee and shall receive reasonable compensation for so acting; and to remove any acting substitute trustee and appoint another, or reappoint itself, at will.

-6-

14. To the extent that the Trustee is unable to or unwilling to act with respect to any trust property which is located in a state other than Illinois, then such person (other than myself) or qualified corporation as may be appointed from time to time by the Trustee in a written instrument delivered to such appointee shall act as an individual trustee with respect to such property. Any rentals or other income and the proceeds from any sale of such property which are received by such additional trustee shall be paid to the Trustee hereunder for retention or disposition in accordance with the provisions of this instrument. Taxes, assessments, expenses and other disbursements with respect to such property may be paid directly by the Trustee or may be paid by such additional trustee with the approval of the Trustee. Except as otherwise provided in this paragraph any additional trustee shall have such powers and discretions contained in this ARTICLE with respect to such property as may from time to time be granted in an instrument in writing signed by the Trustee. Any additional trustee may resign by an instrument in writing delivered to the Trustee and may be removed at any time by the Trustee. Unless otherwise required by the Trustee, no bond shall be required of any additional trustee, or if a bond is required by law, no security on such bond shall be required.

## ARTICLE V

1. In the event that Robert C. Woolard dies, resigns or ceases to serve as Trustee hereunder, SCOTT ELLWOOD, of Winnetka, Illinois, and WILLIAM A. GIFFORD, JR., of Evanston, Illinois, shall be and become Trustees hereunder. In the event that either Scott Ellwood or William A. Gifford, Jr., dies, resigns or ceases to serve as a Trustee hereunder, the other shall continue to serve as Trustee hereunder, or if there is no remaining Trustee then acting, such individual (other than myself) who is designated in writing by the then acting Trustees or Trustee hereunder after the death, resignation or cessation of service of Robert C. Woolard as Trustee hereunder, shall be and become Trustee hereunder. No one who has contributed property to this trust shall be appointed as Trustee hereunder, and no provision hereof shall be construed as authorizing the Trustee hereunder to use the income or principal to discharge the Trustee's legal obligations.

2. If, in the opinion of each next designated Trustee, or if none, in the opinion of my oldest living issue or such issue's guardian of the estate, any Trustee is unable properly to manage the affairs of the trust, said Trustee shall cease to be a Trustee hereunder.

3. In the event that any vacancy from time to time occurs in the office of Trustee, I will, if then living and competent, or if not, by agreement between such of my children as may then be living and competent, or if there is none then living and competent, my oldest living issue or such issue's guardian shall appoint as a successor Trustee, by an instrument in writing delivered to such appointee, any bank or trust company in the United States or Canada, and in the case of a bank, one which had capital and surplus of at least $10,000,000.00 at the end of the fiscal year immediately prior to the year of its appointment and the trust department of which had been in existence at the end of such fiscal year for at least ten (10) years.

4. In the event that any corporate Trustee merges into or consolidates with another corporation, the corporation resulting from such merger or consolidation shall become a successor Trustee.

5. Every successor Trustee shall forthwith on its assuming the office of Trustee, without the necessity of any act of transfer or action by any court, become vested with title to the trust property, and shall become vested with and have all the same powers and discretions granted an original Trustee.

6. No Trustee shall be responsible for the acts or omissions of another Trustee. Each Trustee shall be responsible only for its acts or omissions in bad faith. With my approval if I am living, otherwise with the approval of a majority in interest of the beneficiaries then entitled to receive or have the benefit of the income from the trust, a successor Trustee may accept the account rendered and the property received as a full and complete discharge to any predecessor Trustee without incurring any liability for so doing.

7. A Trustee may resign at any time by an instrument in writing delivered to me, or if I am not then living and competent, to the remaining Trustees or Trustee, or if there is no other then acting Trustee, to the oldest living issue of my mother or such issue's guardian.

8. Reasonable compensation shall be paid to any corporate Trustee for its services hereunder, to be charged half against income and half against principal, except that the Trustee shall have full discretion at any time or times to charge a larger portion or all against income without being limited to circumstances specified by state law.

-8-

9.   No bond shall be required of any Trustee hereunder, or if a bond is required by law, no security on such bond shall be required.

10.   The donee of any power, including any discretion, right or authority, given under the provisions of this instrument may disclaim or release such power in whole or in part, or may reduce such power to limit the objects in whose favor such power would otherwise be exercisable.   In addition to any other method of disclaimer, release or reduction recognized by law, such donee may disclaim or release in whole or in part or may reduce any power given to him, her or it hereunder by delivering an instrument in writing declaring his, her or its intention in this regard to the Trustees, or if such donee is a Trustee, to me, or if I am not then living and competent, to the remaining Trustees or Trustee, or if there is no other then acting Trustee, to the oldest living issue of my mother or such issue's guardian.

ARTICLE VI

1.   The term "Trustee" means the Trustee or Trustees from time to time acting hereunder and shall be deemed to include not only the original Trustee but also any successor Trustee.

2.   The term "issue" means lawful blood descendants indefinitely of the ancestor designated, and for the purposes of this instrument, adoption shall be the equivalent of natural birth.

3.   Any word in the text of this instrument shall be read as the singular or the plural and as the masculine, feminine or neuter gender as may be appropriate under the circumstances then existing.

ARTICLE VII

1.   No person dealing with the Trustee shall be required to see to the application of the rents, purchase money or moneys borrowed or advanced upon or against the trust property or any

-9-

part thereof, or be obliged to see that the terms of this instru-
ment have been complied with, or be obliged to inquire into the
necessity or expediency of any act of the Trustee.

2. The trust established hereunder is an Illinois trust
made in that State, and is to be governed and construed and
administered according to its laws and shall continue to be so
governed and construed and administered even though it is
administered elsewhere within the United States or abroad.

IN WITNESS WHEREOF, I, JOHN F. WOOLARD, as Donor, and ROBERT
C. WOOLARD, as Trustee, have executed this instrument the day and
year first above written.

_____ (SEAL)
John F. Woolard, Donor

_____ (SEAL)
Robert C. Woolard, Trustee

## SCHEDULE A

## ATTACHED TO

## THE JOHN C. WOOLARD PRESENT INTEREST TRUST

1.   Cash in the amount of Five Hundred Dollars ($500.00).


_____ (SEAL)
John F. Woolard, Donor

_____ (SEAL)
Robert C. Woolard, Trustee

-11-

B

## IRREVOCABLE TRUST AGREEMENT

I, JOHN F. WOOLARD, of Kenilworth, Illinois, hereby transfer to my brother, ROBERT C. WOOLARD, as trustee, the property described in the attached Schedule A, said property and all investments and reinvestments thereof and additions thereto (the "trust property") to be held subject to the following trusts:

1.    This instrument and the trusts hereby evidenced may be designated the "JOHN C. WOOLARD 1991 TRUST."

2.    The trustee immediately shall allocate the trust property to a trust named for my son, John C. Woolard, born May 9, 1982. This trust and any other trust created under the following provisions of this paragraph shall be held and disposed of as follows:

        (a)    The trustee of the trust named for my son, John C. Woolard, may pay to or apply for the benefit of my son and his descendants, or any one or more of them, such part or all of the income and principal of the trust named for him (even though exhausting the trust named for him) at such time or times and in such equal or unequal proportions among them as the trustee, in the trustee's sole discretion, believes desirable for the best interests and welfare of my son and his descendants in that order and as a group, considering the desirability of supplementing their respective incomes or assets and all other circumstances and factors the trustee believes pertinent. In addition to the preceding provisions, after my son has attained the age of twenty-five years and when the trustee considers that my son has reached a sufficient stage of maturity that would have caused me to consider making significant and meaningful distributions to my son, the trustee should consider making such distributions to him under such circumstances. Any undistributed income of the trust named for my said son shall be accumulated and from time to time added to principal.

        (b)    The trustee may pay to or apply for the benefit of a person (other than my son, John C. Woolard) for whom a trust held under this paragraph is named and his or her descendants, or any one or more of them, such part or all of the income and principal of the

-1-

trust (even though exhausting the trust) at such time or times and in such equal or unequal proportions among them as the trustee, in the trustee's sole discretion, believes desirable for the best interests and welfare of such person and his or her descendants in that order and as a group, considering the desirability of supplementing their respective incomes or assets and all other circumstances and factors the trustee believes pertinent. Any undistributed income of a trust shall be accumulated and from time to time added to principal.

(c)     If a person dies before the complete distribution of the trust held under this paragraph named for him or her, then on the death of such person any part or all of the principal of the trust and the accrued or undistributed income thereof shall be distributed to or for the benefit of such one or more persons then living or thereafter born who are descendants of my mother, Bernice A. Woolard, in such proportions and subject to such trusts, powers and conditions as such person may provide and appoint by will specifically referring to this power to appoint, except that no person shall have the power to appoint to or for the benefit of such person, his or her estate or the creditors of either. The trustee may rely on a will admitted to probate in any jurisdiction as the last will of such person or may assume such person had no will in the absence of actual knowledge of a will within three months after his or her death.

(d)     On the death of a person for whom a trust held under this paragraph is named, any principal of the trust not effectively disposed of by any other provisions of this paragraph shall be divided and allocated per stirpes among the then living descendants of such person, or, if none, per stirpes among the then living descendants of my mother, Bernice A. Woolard (other than my brother, Robert C. Woolard, and myself), if any, otherwise shall be distributed to my said brother, if then living, otherwise shall be distributed to the executors or administrators of the estate of the last descendant of my mother (other than me) to die. Property so allocated to a person for whom a trust then held under this paragraph is named shall be added to that trust, and property so allocated to any other person shall be retained in trust as a separate trust named for him or her and disposed of as provided in this paragraph.

(e)     Despite any other provisions of this paragraph:

(1)     Twenty-one years after the death of the last to die of the "measuring lives" (meaning the descendants of my mother, Bernice A. Woolard, living on the date of this instrument), the trustee shall distribute any property then held in a trust under this paragraph to the person for whom the trust is named.

(2)    No power of appointment granted under this paragraph may be exercised to postpone the absolute ownership of any interest in property for more than twenty-one years after the death of the last to die of all measuring lives and such additional persons designated in the exercise of the power as are living on the date of this instrument.

3.    On the death of the last to die of all of the descendants of my mother, Bernice A. Woolard, any part of the trust property or of any separate trust not effectively disposed of by any of the above provisions of this instrument shall be distributed to First Church of Christ Scientist, of Wilmette, Illinois.

4.    Whenever the trustee considers that a beneficiary entitled to income or principal payments is incapacitated in any way so as to be unable to manage his or her financial affairs, such payments may be made directly to such beneficiary, to a duly appointed guardian or conservator of such beneficiary or to a custodian for such beneficiary under a Uniform Gifts or Transfers to Minors Act or otherwise expended for such beneficiary's benefit as the trustee considers advisable.

5.    Except as otherwise provided, income accrued or undistributed at the termination of any interest shall be treated as if it had accrued immediately after such termination.

6.    The interests of the beneficiaries in principal or income shall not be subject to the claims of their creditors or others, including claims by the spouse of any beneficiary for alimony, support, maintenance or otherwise, and may not be transferred or encumbered.   The preceding sentence shall not be construed as restricting in any way the exercise of any power of appointment granted by this instrument.

7.    In the administration of the trusts, the trustee, except as otherwise

-3-

provided in this instrument, shall have the following powers and rights and all others granted by law:

(a) To manage, sell, contract to sell, grant or exercise options to purchase, convey, exchange, transfer, abandon, improve, repair, insure and otherwise deal with all property, real or personal, in such manner, for such prices and on such terms and conditions as the trustee shall decide.

(b) To retain indefinitely any property received by the trustee and invest and reinvest the trust property in stocks, bonds, mortgages, notes or other property of any kind, real or personal, including interests in partnerships, joint ventures, land trusts or other title-holding trusts, investment trusts or other business organizations as a limited or general partner, shareholder, creditor or otherwise, and any investment made or retained by the trustee in good faith shall be proper despite any resulting risk or lack of diversification or marketability and although not of a kind considered by law suitable for trust investments.

(c) To subdivide, resubdivide, raze, alter, dedicate, vacate, donate, partition, release, lease or renew, amend or extend leases for any term, contract to make leases, grant options to lease or to purchase the whole or any part of the reversion, contract regarding the manner of fixing present or future rentals and grant easements or charges of any kind on or with respect to any property, real or personal, including any improvements thereon, or any right, title or interest therein, all for such prices and on such terms and conditions, although commencing in the future or extending beyond the term of the trusts, as the trustee shall decide.

(d) To borrow from any source (including the trustee individually) and mortgage or pledge any trust property.

(e) To settle or abandon claims or demands.

(f) To give proxies to vote stocks and voting securities and to enter into or oppose, alone or with others, voting trusts, mergers, consolidations, foreclosures, liquidations, reorganizations or other changes in the financial structure of any corporation or buy-sell, stock restriction or stock redemption agreements.

(g) To retain or invest in (alone or jointly with others) life insurance, annuity or endowment policies, or policies incorporating combined life, annuity or endowment features, including group insurance coverage (referred to in this instrument as "insurance policies"), in such form, on such life or lives (other than my life) and on

-4-

such terms as the trustee considers advisable.

(h)    To hold property in the name of a nominee or in any other way without disclosing the trust relationship.

(i)    To employ agents and counsel (including investment counsel) and delegate to them any powers of the trustee.

(j)    To decide, despite rules of law, how and in what proportions any receipts or disbursements shall be credited, charged or apportioned as between principal and income.

(k)    To divide, segregate, allocate or distribute trust property in undivided interests, non-pro rata or wholly or partly in kind at fair market value.

(l)    To segregate by allocation to a separate trust a portion of or specific assets included in the trust property, or property directed to be added to or consolidated with the trust property, of any trust held hereunder in order to reflect a partial disclaimer or differences in federal tax attributes (in a manner consistent with the rules governing such federal tax attributes).  Except for disclaimed powers or interests or as expressly provided by this instrument, the separate trust created by such segregation shall be held on the same terms and conditions as the trust from which it was segregated.  In managing, investing and administering the trust property of any such separate trust and in making applicable tax elections, the trustee shall consider the differences in federal tax attributes and all other factors the trustee believes pertinent.

(m)    To hold for administrative and investment purposes only separate trusts under this or any other instrument in one or more common accounts in which such trusts have undivided interests, and, if the separate trusts are for the benefit of the same persons with substantially the same terms, conditions and federal tax attributes, to merge and consolidate the trust property of any such trust held hereunder with such other trust and thereafter to administer such trust property as a single trust.

(n)    To pay all taxes and all reasonable expenses, including compensation to the trustee (other than any descendant of Bernice A. Woolard or a spouse of such descendant) and the agents and counsel (including investment counsel) of the trustee; and, in this regard, whenever the termination of an interest in trust property held hereunder is a taxable termination as a result of which a federal or state tax on certain generation-skipping transfers is imposed, such tax and expenses related to the payment of such tax shall be paid by the

trustee out of the principal of the trust property to which the tax relates after making any division or allocation of trust property required by reason of such termination.

(o) To deal without restriction with the trustee or other legal representative of any trust or estate in which any beneficiary hereunder has an interest, even though the trustee, individually, shall be acting in such other capacity, without liability for any loss that may result.

(p) To appoint or remove by written instrument any person (other than myself, any beneficiary hereunder or any person legally obligated to support a beneficiary hereunder) or qualified corporation, wherever located, as special trustee as to part or all of the trust property, including property as to which the trustee does not act, and such special trustee, except as specifically limited or provided by this or the appointing instrument, shall have all of the rights, titles, powers, duties, discretions and immunities of the trustee, without liability for any action taken or omitted to be taken under this or the appointing instrument.

(q) To receive additional property from any person by will or otherwise.

(r) To perform all other acts in the trustee's judgment appropriate for the proper management and investment of trust property.

8. The trustee's exercise or nonexercise of powers and discretions in good faith shall be conclusive on all persons. No one need see to the application of money paid or property delivered to the trustee. The trustee's certificate that the trustee is acting according to this instrument shall fully protect all persons dealing with the trustee.

9. To the extent such requirements can be waived, the trustee shall not be required (a) to file any inventory of trust property or accounts or reports of the administration of the trusts, or to register the trusts, in any court, (b) to furnish any bond or other security for the proper performance of the trustee's duties or (c) to obtain authority from a court for the exercise of any power conferred on the trustee

by this instrument.

10.     Any trustee may resign at any time by written notice to each of my brother, Robert C. Woolard, and my adult descendants who then is living, or, if none, to each of the adult descendants of my mother, Bernice A. Woolard (other than myself), who then is living.

11.     My brother, Robert C. Woolard, if legally competent, otherwise the majority of my adult descendants who are legally competent, if any, otherwise the majority of the adult descendants of my mother, Bernice A. Woolard (other than myself) who are legally competent, may appoint a successor to fill any vacancy in the office of trustee by written instrument delivered to the person (other than myself, any beneficiary hereunder or any person legally obligated to support any beneficiary hereunder) or corporation appointed.

12.     Any person acting or named to act in a fiduciary capacity hereunder or required to be legally competent in order to act hereunder shall be considered to have ceased or failed to act or to be legally incompetent to act when a physician whom such person has consulted within the prior three years has certified as to such consultation and also as to the lack of the physical or mental capacity of such person to manage his or her financial affairs.

13.     Each successor trustee shall have the same rights, titles, powers, duties, discretions and immunities and otherwise be in the same position as if originally named trustee.  No successor trustee shall be personally liable for any act or failure to act of a predecessor trustee.   With the approval of the person or persons appointing a successor trustee, the latter may accept the account furnished and the property delivered by or for a predecessor trustee without liability for so doing, and

such acceptance shall be a full and complete discharge to the predecessor trustee.

14.   For all purposes of this instrument, whenever the trustee is directed to distribute trust property or to divide and allocate trust property per stirpes to or among the then living descendants of a person, the trust property to be distributed or allocated shall be divided into as many equal shares as are necessary to distribute or allocate one share to each then living child of such person and to provide one share collectively for the then living descendants of each child of such person who then is deceased leaving one or more descendants then living. Each share so provided for the descendants of a deceased child of such person shall be distributed or divided and allocated per stirpes to or among such descendants.

15.   The laws of the State of Illinois shall govern the interpretation and validity of the provisions of this instrument and all questions relating to the management, administration, investment and distribution of the trusts hereby created.

16.   I waive all right, power and authority to alter, amend, modify, revoke or terminate this agreement and the trusts hereby evidenced.

\*   \*   \*

I have signed this instrument and have established the foregoing trusts

on _December 23_, 1991.

_____
John F. Woolard

     **The** undersigned accepts the foregoing trusts as of the date last above written.

_____
Robert C. Woolard

\12048\010\35IITSXE.001

## SCHEDULE A

### JOHN C. WOOLARD 1991 TRUST

Cash . . . . . . . . . . . . . . . . . . . . . . .   $ 10.00