IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN C. WOOLARD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05 C 7280 |
| | ) | |
| **ROBERT C. WOOLARD,** individually | ) | Magistrate Judge |
| and as Trustee of the John C. Woolard | ) | Martin C. Ashman |
| Present Interest Trust and the John C. | ) | |
| Woolard 1991 Trust, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, John C. Woolard (hereinafter "Plaintiff"), and Defendant, Robert C. Woolard (hereinafter "Defendant"), have each moved for summary judgment in this case arising out of Defendant's management of a trust established for Platintiff's benefit. This Court has jurisdiction over the claim, which arises under Illinois law, based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Local R. 73.1. For the reasons that follow, the Court denies Defendant's motion for summary judgment and grants Plaintiff's motion for summary judgment on the issue of liability only. The Court will issue a separate opinion on the applicable rate of interest and total amount of damages once those issues have been fully briefed by the parties in accordance with the schedule set forth in Section II. C of this opinion.

# I. Background

## A. The Trust

This case centers on Defendant's management of the 1983 John C. Woolard Present Interest Trust (hereinafter "the Trust"), which was established for Plaintiff's benefit by the late John F. Woolard. (Pl.'s Mem., Summary Judgment, at 1.)[1] John F. Woolard was Plaintiff's father and Defendant's brother. (Id.) Plaintiff was born in 1982. (Def.'s LR 56.1 Stmt., ¶ 3.) The Trust was established by a trust agreement entered into on May 31, 1983, by Defendant and Plaintiff's father. (Pl.'s LR 56.1 Stmt., ¶ 5.) Plaintiff's father originally funded the Trust with a contribution of $500. (Id., ¶ 7.) The initial contribution and all subsequent contributions were deposited in an account at the brokerage firm where Defendant was employed; Defendant carried out all transactions and disbursements from the Trust through this account. (Id., ¶¶ 17-18; Def.'s Resp. to Pl.'s LR 56.1 Stmt., ¶¶ 18-19.)

The trust agreement provided that the Trust was to be administered for the sole benefit of Plaintiff. (Pl.'s LR 56.1 Stmt., ¶ 8.) As Trustee, Defendant had the discretion to make distributions from the income or the principal of the Trust for Plaintiff's benefit until Plaintiff turned twenty-one or died. (Pl.'s LR 56.1 Stmt., ¶¶ 9-11.) By the terms of the trust agreement, Defendant was authorized to make loans of Trust property at an "adequate" interest rate provided that "adequate security" was given, but was expressly forbidden from making loans to Plaintiff's father, the settlor of the trust. (Id., ¶ 10-11.)

---

[1] Earlier in the litigation, Plaintiff asserted claims involving another trust, the John C. Woolard 1991 Trust. However, Plaintiff acknowledges that this trust was never funded beyond a nominal initial amount and is no longer at issue in the litigation. (Pl.'s LR 56.1 Stmt. ¶ 1.)

Plaintiff's father died in July 2002. (Pl.'s LR 56.1 Stmt., ¶ 25.) At the time of his death, he was more or less insolvent. (Id.) The value of the Trust as of June 30, 2002, was approximately $18,000. (Pl.'s LR 56.1 Stmt., ¶ 35.) Several issues arose during the administration of Plaintiff's father's estate that are at the heart of this lawsuit. First, Defendant presented to the attorneys for Plaintiff's father's estate a number of documents that he claimed to have discovered in Plaintiff's father's study. (Id., ¶ 26.) These documents purported to be promissory notes payable to the Trust or to Defendant as trustee. (Id., ¶ 26.) Next, in his capacity as trustee, Defendant filed a claim in probate court against Plaintiff's father's estate alleging that Plaintiff's father had borrowed a total of $877,933 from the Trust. (Id., ¶ 27.) This amount was equal to the total amount of indebtedness evidenced by the promissory notes. (Def.'s LR 56.1 Stmt., ¶ 24.) The probate court claim for $877,933 against Plaintiff's father's estate was never paid. (Def.'s LR 56.1 Stmt., ¶ 26; Pl.'s Resp. to Def.'s LR 56.1 Stmt., ¶ 26.) Defendant now denies the authenticity of the promissory notes and denies ever agreeing to make loans to Plaintiff's father. (Def.'s Resp. to Pl.'s LR 56.1 Stmt., ¶¶ 26, 31.)

In support of his claim against Plaintiff's father's estate in probate court, Defendant provided documentation in the form of check stubs and demand notes indicating that Defendant had disbursed $877,933 to Plaintiff's father between January 1990 and February 2001. (Pl.'s LR 56.1 Stmt., ¶¶ 28-29.) Between July and December of 1999, Defendant disbursed a total of $336,500 to Plaintiff's father. (Id., ¶ 30.) Plaintiff asserts, and Defendant does not deny, that Defendant made these disbursements without any specific knowledge regarding how the funds would be used. (Id.; Def.'s Resp. to Pl.'s LR 56.1 Stmt., ¶ 30.) Some of the check stubs corresponding to disbursements from the Trust contain notations by Plaintiff's father that, in

Plaintiff's view, indicate that the funds were used for improper purposes, such as the payment of Plaintiff's father's personal expenses. (Pl.'s LR 56.1 Stmt., ¶¶ 31-32.) Defendant denies that the check stub notations are proof of an improper purpose, questioning their authenticity, admissibility, and probative value. (Def.'s Resp. to Pl.'s LR 56.1 Stmt., ¶ 31-33.) Defendant maintains that he believed that the funds he gave to Plaintiff's father were being used for Plaintiff's benefit. (Def.'s LR 56.1 Stmt., ¶ 22.) Defendant denies Plaintiff's assertion that his father's notations are the only evidence of the purpose of the disbursements, claiming that the checks themselves provide a record of the purposes of the disbursements. (Def.'s Resp. to Pl.'s LR 56.1 Stmt., ¶ 33.) Beyond relying on the check records themselves, Defendant does not provide any other evidence of the purposes of the disbursements to Plaintiff's father.

## B. The Current Litigation

On December 29, 2005, Plaintiff filed a three-count complaint. Count One, styled "Action for an Accounting," seeks "a full accounting" of the Trust's activity. (Compl. at 6-7.) As both Plaintiff and Defendant agreed at oral argument, there is no further documentation of the Trust's finances beyond what Defendant has already produced. For this reason, Plaintiff agreed at oral argument that Count One should be dismissed. Counts Two and Three allege that, by making disbursements that were not for Plaintiff's express benefit, loaning trust funds to Plaintiff's father, and otherwise failing to properly administer the Trust, Defendant breached the terms of the Trust as well as his fiduciary duty to Plaintiff. (Compl. at 7-8.)

Before this Court are Plaintiff's and Defendant's motions for summary judgment. Plaintiff's motion for summary judgment sets forth three bases on which Plaintiff believes that he

is entitled to summary judgment. Plaintiff first argues that Defendant breached the terms of the trust agreement either by making unauthorized loans to Plaintiff's father or, alternatively, by making unauthorized distributions to Plaintiff's father and failing to ensure that they were used for Plaintiff's benefit. (Pl.'s Mot., Summary Judgment, ¶¶ 9-16.) Plaintiff next argues that he is entitled to summary judgment because Defendant breached his duty as a trustee to maintain complete and accurate records of the Trust's activity. (Id., ¶¶ 17-19.) Finally, Plaintiff argues that Defendant violated his fiduciary duty to Plaintiff through his careless administration of the Trust. (Id., ¶¶ 20-24.) Defendant's terse motion for summary judgment argues that Defendant is entitled to prevail as a matter of law because there is "no evidence" to support any of Plaintiff's claims. (Def.'s Mot., Summary Judgment, ¶ 4.) For the reasons that follow, Plaintiff's motion for summary judgment is granted on the issue of liability, and Defendant's motion is denied.

## II. Discussion

### A. Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Dribeck Importers, Inc. v. G. Heileman Brewing Co., Inc.*, 883 F.2d 569, 573 (7th Cir. 1989) (internal citation omitted). In deciding a motion for summary judgment, the Court views the facts in a light most favorable to

- 5 -

the non-moving party. *Regner v. City of Chi.*, 789 F.2d 534, 536 (7th Cir. 1986). However, the fact that there is a dispute as to some facts does not preclude summary judgment; rather, only factual disputes that might affect the outcome of the case are taken into account at the summary judgment stage. *Derrico v. Bungee Int'l Mfg. Co.*, 989 F.2d 247, 250 (7th Cir. 1993). Because Plaintiff's claim arises under Illinois state law and this Court's jurisdiction is based on diversity of citizenship, the Court applies the substantive law of Illinois in deciding these motions for summary judgment. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000).

### B.    Defendant's Motion for Summary Judgment

#### 1.    Action for Accounting

Defendant first argues that he is entitled to summary judgment with regard to Count One of Plaintiff's complaint seeking an accounting of the Trust's activity. (Def.'s Mem., Summary Judgment, at 6-7.) As discussed above, Plaintiff agreed to dismiss this count at oral argument on August 29, 2007. Accordingly, Count One of Plaintiff's complaint is hereby dismissed.

#### 2.    Breach of Trust / Breach of Fiduciary Duty

Defendant next argues that he is entitled to summary judgment on Plaintiff's breach of fiduciary duty and breach of trust claims. (Def.'s Mem., Summary Judgment, at 7-10.) In response to Plaintiff's allegations that he violated the terms of the trust, Defendant argues that there is "no evidence" that Defendant ever agreed to make loans to Plaintiff's father in violation of the trust agreement. (Id. at 8-9.) Similarly, turning to the alleged breach of fiduciary duty, he

- 6 -

argues that there is no evidence of unauthorized distributions that were not for Plaintiff's benefit. (Id. at 10.)[2]

As discussed above, in considering a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Regner*, 789 F.2d at 536. Thus, in considering Defendant's motion, we construe the facts in the light most favorable to Plaintiff. Defendant asserts that there is no evidence that he ever agreed to make loans of trust property to Plaintiff's father, and that therefore there is no basis for a finding that he breached the terms of the trust agreement. This argument is refuted by Defendant's own pleadings in this case. Defendant does not dispute the existence of a number of promissory notes that appear to reference loans from the Trust to Plaintiff's father, or that Defendant himself relied on these promissory notes when he claimed in probate court that Plaintiff's father had borrowed $877, 933 from the Trust. (Def.'s Resp. to Pl.'s LR 56.1 Stmt. ¶¶ 26, 27.) By Defendant's own admission, therefore, there is at least "some" evidence supporting Plaintiff's theory that Defendant made loans to Plaintiff's father in violation of the terms of the Trust. On the other hand, the only evidence in support of Defendant's position is his assertion that he never agreed to loan money to Plaintiff's father. (Def.'s Resp. to Pl.'s LR 56.1 Stmt., ¶ 31, 33.) Viewing all of the evidence in the light most favorable to Plaintiff, the Court finds that Defendant has not shown that "that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of

---

[2] Several arguments in Defendant's memorandum appear to respond to allegations contained in Plaintiff's complaint that Plaintiff has apparently abandoned, such as Defendant's alleged use of trust property to underwrite his own high-risk investments. (Compl. at 4-5.) As they are no longer relevant to the case, the Court does not address them here.

law." Fed. R. Civ. P. 56(c). Consequently, Defendant's motion for summary judgment on the issue of breach of trust is denied.

Defendant's argument that he is entitled to summary judgment on Plaintiff's breach of fiduciary duty claim likewise fails. Defendant does not dispute that he disbursed $877,933 from the trust to Plaintiff's father between January 1990 and February 2001, including $336,500 in a six-month period from July to December of 1999. (Def.'s Resp. To Pl.'s LR 56.1 Stmt., ¶¶ 28-30.) Defendant admits that he did not know the specific purposes for which the money was being used, although he maintains that it was his understanding that Plaintiff's father was using the money for Plaintiff's benefit. (Id., ¶ 30; Def.'s LR 56.1 Stmt., ¶ 22.) Lastly, Defendant does not deny that he did not keep any independent records of how much money he paid out or the purposes of the disbursements. (Def.'s Resp. to Pl.'s LR 56.1 Stmt., ¶ 23.)

Nonetheless, Defendant argues that he is entitled to summary judgment because there is no evidence that the trust made unauthorized distributions that were not for Plaintiff's benefit. (Def.'s Mem., Summary Judgment, at 10.) Defendant maintains that, because there is no evidence of bad faith, fraud, or an abuse of discretion, the Court should not "second guess" his actions as trustee. (Id.) The Court disagrees with Defendant's argument on several grounds. First, as will be seen later in this opinion, the Court disagrees with Defendant's view of the scope of the powers and duties of a trustee. However, even assuming that Defendant can only be liable for a breach of his fiduciary duty to Plaintiff in the event of bad faith, fraud, or abuse of discretion, the Court finds that there is sufficient evidence for a reasonable jury to find in Plaintiff's favor on these issues. Particularly significant are Defendant's failure to keep his own records of when and why he distributed money from the Trust and his highly questionable

conduct in disbursing $336,500 in a six-month period, which he claims he believed was necessary for the well-being of a seventeen-year-old child. Because evidence that is not in dispute could support a finding that Defendant acted fraudulently, acted in bad faith, or abused his discretion, Defendant is not entitled to summary judgment on the issue of whether he breached his fiduciary duty to Plaintiff. *See Dribeck*, 883 F.2d at 573 (summary judgment is innapprropriate when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986))).

Because the undisputed facts of this case, viewed in the light most favorable to Plaintiff, do not show that Defendant is entitled to judgment as a matter of law, Defendant's motion for summary judgment is denied.

### C.    Plaintiff's Motion for Summary Judgment

Plaintiff moves this Court for summary judgment in his favor and for an award of damages atttributable to Defendant's alleged misfeasance in administering the Trust. Plaintiff alleges three independent, though factually interrelated, bases for this recovery. The Court finds that, on each of the three issues, Plaintiff is entitled to summary judgment as to Defendant's liability. For the reasons discussed below, the Court will rule on the appropriate amount of interest and the total amount of damages in a separate opinion after these issues have been fully briefed.

### 1.    Breach of Trust

Plaintiff first argues that he is entitled to summary judgment because undisputed facts show that Defendant breached the terms of the trust agreement when he disbursed funds to Plaintiff's father. (Pl.'s Mem., Summary Judgment, at 9-11.) Under Illinois law, "the powers and duties of a trustee must be determined by the instrument creating the trust." *In re Hartzell's Will*, 43 Ill. App. 2d 118, 134, 192 N.E.2d 697, 705 (App. Ct. 1963). Once a person accepts the role of trustee, he "becomes bound to administer it . . . in accordance with the provisions of the trust instrument." *Id.* Any deviation from the express terms of the agreement constitutes a breach of trust. *Northwestern Mut. Life Ins. Co. v. Wiemer*, 96 Ill. App. 3d 549, 552, 421 N.E.2d 1002, 1004 (App. Ct. 1981). This is true whether the breach is fraudulent, negligent, or merely an oversight. *Stuart v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 68 Ill.2d 502, 523, 369 N.E.2d 1262, 1271 (1977). A trustee who breaches the terms of a trust agreement is personally liable for any losses that result from the breach. *Grot v. First Bank of Schaumburg*, 292 Ill. App. 3d 88, 91, 684 N.E.2d 1016, 1018 (App. Ct. 1997). Thus, Plaintiff is entitled to recover from Defendant if the undisputed facts show that Defendant breached the terms of the Trust when he disbursed funds from the Trust to Plaintiff's father. It is not disputed that Defendant transferred money from the Trust to Plaintiff's father. (Pl.'s LR 56.1 Stmt., ¶¶ 28-29; Def.'s Resp. to Pl.'s LR 56.1 Stmt., ¶¶ 28-29.) The critical question is whether these disbursements violated the terms of the Trust.

### a.    Alleged Loans to Plaintiff's Father

Plaintiff first argues that he is entitled to summary judgment because undisputed evidence

shows that Defendant loaned $877,933 in trust assets to Plaintiff's father. (Pl.'s Mem., Summary

Judgment, at 7.)  The parties agree that the terms of the trust agreement expressly prohibited

Defendant from making any loans to Plaintiff's father. (Pl.'s LR 56.1 Stmt., ¶¶ 10-11; Def.'s

Resp. to Pl.'s LR 56.1 Stmt., ¶¶ 11-12.)  Plaintiff is therefore entitled to summary judgment

unless there is a genuine issue of fact as to whether Defendant made loans from the Trust to

Plaintiff's father.

In support of his position that there is no such issue of fact, Plaintiff points to the

promissory notes discovered after his father's death and the probate court claim in which

Defendant asserted that Plaintiff's father had borrowed money from the Trust. (Pl.'s Mem.,

Summary Judgment, at 7-8.)  Plaintiff further notes that Defendant has no documentary evidence

showing that the the disbursements were not loans and supports his position only with his

testimony that he never agreed to loan money to Plaintiff's father. (Pl.'s Mem., Summary

Judgment, at 8-9; Def.'s LR 56.1 Stmt., ¶ 25.)

Based on these facts, Plaintiff makes two arguments in support of summary judgment.

First, he argues, relying on *Walaschek & Assoc., Inc. v. Crow*, 733 F.2d 51, 54 (7th Cir. 1984),

that this Court should treat Defendant's claim in the probate court proceeding that the

disbursements were loans as a judicial admission and that Defendant should be estopped from

arguing otherwise. (Pl.'s Mem., Summary Judgment, at 8.)  However, Plaintiff's reading of

*Walaschek* is only half correct.  While *Walaschek* stands for the proposition that the pleadings in

one case may be admitted as substantive evidence in another, it does not hold that such evidence

must be given controlling or conclusive weight. 733 F.2d at 54. As the Seventh Circuit stated in *Enquip, Inc. v. Smith-McDonald Corp.*, pleadings in a state court case are admissible in federal court but are not binding or conclusive. 655 F.2d 115, 118 (7th Cir. 1981). Therefore, Defendant's pleading in the probate proceeding is admissible as evidence that the disbursements were loans, but does not conclusively decide the issue or prevent Defendant from presenting evidence to the contrary in this case.

Plaintiff next argues that, even if Defendant's testimony that he never agreed to make loans to Plaintiff's father is admissible, it is still insufficient to raise a genuine issue of fact in light of Plaintiff's documentary evidence. This argument fails. Addressing the quantum of evidence necessary to defeat a motion for summary judgment, the Supreme Court has held that "[t]he mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [the non-moving party]." *Anderson*, 477 U.S. at 252. Here, the Court finds that Defendant has met his burden to produce evidence that creates a genuine issue of fact as to whether or not the disbursements to Plaintiff's father were loans. It is not inconceivable that a reasonable jury could credit Defendant's testimony over the promissory notes and Defendant's own pleadings in the probate case. Because a reasonable jury could find for Defendant, he has provided more than a "scintilla" of evidence, creating a genuine issue of material fact as to whether the disbursements were loans. Therefore, Plaintiff is not entitled to summary judgment on the issue of Defendant's alleged loans to Plaintiff's father.

b.  Disbursements to Plaintiff's Father as *per se*
Breaches of the Trust

Plaintiff next argues that, even if the payments to Plaintiff's father were not loans,
the disbursements nonetheless violated the terms of the trust agreement because the agreement
did not authorize payments to Plaintiff's father. (Pl.'s Mem., Summary Judgment, at 6-7; Pl.'s
Reply at 9-11.)  The Illinois Supreme Court, discussing the powers of a trustee, has stated that "it
is axiomatic that the limits of a trustee's powers are determined by the instrument which creates
the trust." *Stuart*, 68 Ill. 2d at 523, 369 N.E.2d at 1271.  In this case, Article III, ¶ 2 of the trust
agreement addresses how payment is to be made during the minority of the beneficiary.  It
provides that payment may be made: "(a) directly to the beneficiary; (b) to the legally appointed
guardian of the beneficiary; or (c) to a custodian under the Uniform Gifts to Minors Act."
(Appendix to Pl.'s Mot., ex. B.)  Based on the plain language of the trust agreement, which does
not authorize payments to the parents of the beneficiary, Defendant's conduct in disbursing funds
to Plaintiff's father appears to be a violation of the terms of the Trust.

Defendant contends that his payments to Plaintiff's father were proper because they were
authorized by the Illinois Trusts and Trustees Act (hereinafter "the Act").  (Def.'s Reply at 5-6.)
In support of this position, he points to Section 4.20 of the Act, which provides that in the event
that the beneficiary of a trust is under a legal disability, the trustee may make distributions "to an
adult relative of the beneficiary."  750 ILCS 5/4.20.  Defendant contends that the provisions of
the Act supplement the terms of the trust agreement.  Therefore, Defendant argues, he was
authorized to distribute funds to Plaintiff's father because Plaintiff was a minor (and therefore
under a legal disability) when the payments were made.  (Def.'s Reply at 5-6.)

The decisive issue is whether the express terms of the trust agreement are the sole source of a trustee's authority under Illinois law or whether the terms of the agreement are supplemented by the provisions of the Illinois Trusts and Trustees Act. The language of the Act itself supplies the answer to this question:

> A person establishing a trust may specify in the instrument the rights, powers, duties, limitations and immunities applicable to the trustee . . . and those provisions where not otherwise contrary to law shall control, *notwithstanding this Act. The provisions of this Act apply to the trust to the extent that they are not inconsistent with the provisions of the instrument.*

760 ILCS 5/3(1) (emphasis added). The clear import of this section is that the provisions of the statute are inapplicable when the trust agreement contains a conflicting provision. Furthermore, this is the meaning that Illinois courts have attached to this section of the Act. *See, e.g., Alexander v. Harris Trust & Sav. Bank*, 81 Ill. App. 3d 1047, 1049, 401 N.E.2d 1168, 1170 (App. Ct. 1980) ("[W]here the terms of the trust agreement are inconsistent with the Act, the trust agreement controls.").

The trust agreement in the instant case provided only three options for disbursements while Plaintiff was a minor; nowhere did it provide for payments to either of Plaintiff's parents or any other adult relative, as the Act would allow. Nonetheless, Defendant argues that the Act should apply because the provision of the trust agreement governing distributions during Plaintiff's minority does not directly contradict Section 4.20 of the Act. This argument fails. In this case, the settlor, Plaintiff's father, took pains to protect the Trust's assets from his own intermeddling. He specifically excluded himself as a borrower from the Trust (even with adequate security) and did not include himself as a distributee of funds for his own son's benefit.

- 14 -

In light of Plaintiff's father's obvious intent to use the trust as a preventive barrier against his own financial mismanagement, holding Section 4.20 to be applicable here would subvert the purpose of the Trust as disclosed by the provisions of the trust agreement. Therefore, Defendant acted outside of the scope of his authority in distributing funds from the Trust to Plaintiff's father, whether or not he believed that they were to be used for Plaintiff's benefit. The power to pay Plaintiff's father was simply never granted.

As discussed above, under Illinois law, acceptance of the role of trustee creates an obligation to administer the trust in accordance with the terms of the trust agreement. *In re Hartzell's Will*, 43 Ill. App. 2d at 134, 192 N.E.2d at 705-706. The failure to adhere to the terms of the trust constitutes a breach of trust for which the trustee is personally liable. *Grot*, 292 Ill. App. 3d at 91, 684 N.E.2d at 1018. In the instant case, the terms of the trust agreement and the fact that Defendant distributed $877,933 to Plaintiff's father are not in dispute. Defendant maintains that he understood that the money disbursed to Plaintiff's father was being used for Plaintiff's benefit. Even accepting Defendant's version of the facts, however, the Court finds that the distributions were a violation of the terms of the Trust because the trust agreement did not authorize distributions to Plaintiff's father. Viewing the facts in a light most favorable to Defendant, the Court finds that Plaintiff is entitled to judgment as a matter of law. Therefore, Plaintiff is entitled to summary judgment on his claim that Defendant's distribution of funds to Plaintiff's father was in itself a breach of trust.

## 2. Failure to Keep Adequate Records

As a second basis for summary judgment, Plaintiff argues that undisputed facts show that Defendant breached his duty to maintain complete and accurate records of the Trust's activities. (Pl.'s Mem., Summary Judgment, 11-13.) The Illinois Trusts and Trustees Act provides that every trustee "at least annually shall furnish to the beneficiaries . . . a current account showing the receipts, disbursements and inventory of the trust estate." 760 ILCS 5/11(a). This duty of the trustee corresponds to the right of the beneficiary "to learn from his trustee what property came into his hands, what has passed out, and what remains therein, including all receipts and disbursements in cash . . . to whom paid *and for what purpose paid*." *McCormick v. McCormick*, 118 Ill. App. 3d 455, 461-62, 455 N.E.2d 103, 109 (App. Ct. 1983) (internal quotations and citation omitted, emphasis added). Thus, "it is well settled that a trustee owes the highest duty to his beneficiary to fully and completely disclose all material facts relating to dealings with the trust." *Regnery v. Meyers*, 287 Ill. App. 3d 354, 363, 679 N.E.2d 74, 79 (App. Ct. 1997). It is the trustee's burden to make a proper accounting; a beneficiary is not required to make an affirmative showing that the trustee failed to account for trust property in order to maintain an action. *Smith v. Stover*, 15 Ill. App. 2d 78, 89-90, 145 N.E.2d 515, 521 (App. Ct. 1957) (quoting *Wylie v. Bushnell*, 277 Ill. 484, 506-07, 115 N.E. 618, 627 (1917)). Finally, where a trustee fails to maintain proper accounts, "all presumptions will be against the trustee upon a settlement; obscurities and doubts being resolved adversely to him." *First Nat'l Bank & Trust Co. of Racine v. Vill. of Skokie*, 190 F.2d 791, 796 (7th Cir. 1951) (citing *Crimp v. First Union Trust & Sav. Bank*, 352 Ill. 93, 102, 185 N.E. 179, 183 (1933)).

In this case, notwithstanding Defendant's assertion that complete and adequate records of the Trust's activity exist, there is no real dispute that the only records Defendant maintained are the account records from his brokerage firm, which merely record the fact that money was disbursed and give no information about the purposes of the disbursements. (Pl.'s LR 56.1 Stmt., ¶ 23 ("The only record of disbursements . . . are statements issued for the Account . . . which show that checks were in fact issued from the account."); Def.'s Resp. To Pl.'s LR 56.1 Stmt., ¶ 23 ("These facts are not in dispute. Defendent asserts that such account records, in fact, supply a complete record of all such disbursements from the account.").) Defendant could not have kept a record of the specific purposes of the disbursements, since by his own admission he gave the funds to Plaintiff's father without knowing specifically how they were being used. (Pl.'s LR 56.1 Stmt., ¶¶ 30, 31.)

In light of these facts, the Court finds that Defendant's record-keeping falls far short of the high standard established by Illinois law. Plaintiff has alleged that Defendant, in his capacity as trustee, mismanaged trust property and failed to distribute it for Plaintiff's benefit, which both parties agree was the sole authorized purpose of the Trust. As discussed above, the burden then shifted to Defendant to prove with adequate records that any money disbursed was disbursed for a proper purpose authorized by the trust agreement. Defendant has failed to provide any record whatsoever of the specific purposes of the distributions other than his assertion that "[t]o the best of Defendant's knowledge all distributions from the trust were for Plaintiff's benefit." (Def.'s Resp. to Pl.'s LR 56.1 Stmt., ¶ 32.) Because Defendant failed to keep adequate records, as a matter of law "all presumptions will be against the trustee upon a settlement; obscurities and doubts being resolved adversely to him." *First Nat'l*, 190 F.2d at 796. Plaintiff is therefore

entitled to summary judgment on the grounds that Defendant failed to keep adequate records of the Trust's activity as required by Illinois law.

### 3.    Breach of Fiduciary Duty

Finally, Plaintiff argues that he is entitled to summary judgment because undisputed facts show conclusively that Defendant breached his fiduciary duty to Plaintiff by mismanaging the Trust. (Pl.'s Mem., Summary Judgment, 13-15.) Under Illinois law, a trustee "owes a fiduciary duty to the beneficiaries and is obligated to carry out the terms of the trust . . . with the highest degree of fidelity and utmost good faith." *Paul H. Schwendener, Inc. v. Jupiter Elec. Co., Inc.*, 358 Ill. App. 3d 65, 74, 829 N.E.2d 818, 828 (App. Ct. 2005). "Trustees are expected to exercise the judgment and care which persons of prudence, discretion and intelligence would exercise in the management of their own personal affairs and under the circumstances then prevailing." *Jefferson Nat'l Bank of Miami Beach v. Cent. Nat'l Bank in Chi.*, 700 F.2d 1143, 1152 (7th Cir. 1983). *See also Cowles v. Morris & Co.*, 330 Ill. 11, 24-25, 161 N.E. 150, 156 (1928) ("A trustee is required to perform the trust he has undertaken in accordance with its provisions, and the care and prudence to be exercised by him are those which ordinary men would exercise under like circumstances concerning their own affairs."). A trustee is liable for any loss resulting from his failure to exercise reasonable care, prudence, and diligence. *In re Hartzell's Will*, 43 Ill. App. 2d at 134-135, 192 N.E.2d at 706.

As discussed above, Plaintiff is entitled to summary judgment only if, viewing the facts in the light most favorable to Defendant, there is no genuine issue of fact that would allow a

reasonable jury to find in Defendant's favor. *Dribeck*, 883 F.2d at 573. Defendant denies any intentional wrongdoing or fraud in the administration of the Trust. Defendant also denies making any loans to Plaintiff's father. (Def.'s Resp. to Pl.'s R. 56. 1 Stmt., ¶¶ 30-32.) While these claims may be undercut by evidence supporting Plaintiff's version of events, it is possible that a reasonable jury—at least in deciding issues involving a subjective mental component, such as fraud or bad faith—could credit Defendant's testimony and find in his favor. Therefore, to the extent that Plaintiff alleges that Defendant committed fraud or administered the trust in bad faith, summary judgment is inappropriate.

The Court next considers whether Plaintiff is entitled to summary judgment because facts not in dispute show that Defendant failed to use the required level of diligence in administering the Trust. In this case, it is undisputed that Defendant did not know with any specificity what Plaintiff's father was doing with the Trust's money when Defendant gave him a total of nearly $900,000, including over $300,000 in one six-month period. (Pl.'s LR 56.1 Stmt., ¶¶ 30, 31.) It is also undisputed that Defendant, having made the distributions, never asked Plaintiff's father for any receipts to document how the funds were used. (Pl.'s LR 56.1 Stmt., ¶ 24.) Even accepting Defendant's version of events, it appears that his efforts to ensure that the funds were being used for Plaintiff's benefit were limited to "verbal conversations that he had with his brother about the purpose of various distributions." (Def.'s Resp. to Pl.'s LR 56.1 Stmt., ¶ 23.)

As discussed above, the mere existence of a factual dispute does not preclude summary judgment; rather, there must be an issue of fact that could influence the outcome of the case. *Derrico*, 989 F.2d at 250. Here, the Court finds that, taking into account all of the evidence, Defendant has failed to raise a genuine issue of fact that would allow a jury to find in his favor.

The facts not in dispute provide compelling evidence that Defendant, if he was not intentionally violating the terms of the Trust and his fiduciary duty to Plaintiff, was at a minimum derelict in carrying out the high duty Illinois law imposed on him to ensure that the Trust was administered properly and for Plaintiff's benefit. Defendant does not point to any positive conduct on his part that could remotely be considered an exercise of due diligence. On these facts, no reasonable jury could find in Defendant's favor. Consequently, Plaintiff is entitled to summary judgment on his claim for breach of fiduciary duty.

### D.     Damages

Plaintiff has demonstrated that he is entitled to summary judgment on three independent bases: Defendant's breach of the terms of the Trust, Defendant's failure to maintain records as required by Illinois law, and Defendant's breach of his fiduciary duty to Plaintiff. Therefore, Plaintiff's motion for summary judgment is granted. The total amount of money distributed from the Trust to Plaintiff's father between the years 1990 and 2001 is $877,933. As trustee of the 1983 John C. Woolard Present Interest Trust, Defendant is personally liable for this amount under any of Plaintiff's legal theories. *See Grot*, 292 Ill. App. 3d at 91, 684 N.E.2d at 1018; *In re Hartzell's Will*, 43 Ill. App. 2d at 134-135, 192 N.E.2d at 706.

In his motion, Plaintiff also asks this Court to award interest. (Pl.'s Mot., Summary Judgment, at 7.) Under Illinois law, a trustee who breaches a trust agreement "must place the beneficiaries in the position they would have held had the breach not occurred." *Grot*, 292 Ill. App. 3d at 91, 684 N.E.2d at 1019. The Seventh Circuit, applying Illinois law, has held that

"[w]hen interest will be allowed, at what rate and from what date is wholly in the discretion of the court." *Jefferson Nat'l Bank*, 700 F.2d at 1154. Plaintiff argues that the proper amount of interest is the interest rate indicated on the disputed promissory notes. Defendant has focused his efforts on fighting liability and has not taken a position the proper means of calculating the interest due on the $877,933 liability. For this reason, the Parties shall brief the issue of the appropriate rate of interest and the total amount of damages to be awarded according to the following schedule: Plaintiff will have 28 days from the issuance of this opinion to file his brief; Defendant will have 28 days from the date Plaintiff's brief is filed to respond; and Plaintiff will have 14 days from the date Defendant's response is filed to reply. Once the issue is fully briefed, the Court will rule on the issues of interest and the total amount of damages. Therefore, Plaintiff's motion for summary judgment is granted on the issue of liability only.

### III.  Conclusion

For the reasons discussed above, Defendant's motion for summary judgment is denied, and Plaintiff's motion for summary judgment is granted on the issue of liability only. The total amount of damages will be determined after the parties have fully briefed the issues of interest and total damages in accordance with the schedule set forth above.

**ENTER ORDER:**

**MARTIN C. ASHMAN**

Dated:  September 19, 2007.                                    United States Magistrate Judge

- 21 -

Copies have been mailed to:

CLAIRE E. GORMAN, Esq.
MICHAEL H. MOIRANO, Esq.
Nisen & Elliott
200 West Adams Street
Suite 2500
Chicago, IL 60606

BRADLEY H. FOREMAN, Esq.
The Law Offices of Bradley H. Foreman,
P.C.
6914 West North Avenue
Chicago, IL 60707

Attorneys for Plaintiff

Attorney for Defendant